PeausoN, J.
After the demurrer was over-ruled, 6 Iredl Eq. 548, the defendant answered, and evidence was taken on both sides; by which these facts were established: In 1838, the plaintiff separated from her husband, the defendant, Robert Huntly, and put herself under the protection of her brother, James PI. Ratcliff, the testator of the other defendant, who undertook to act in her behalf, and, as her next friend, instituted proceedings for alimony. Soon thereafter, the parties, at the instance of mutual friends, agreed to compromise ; and, on the 22d of May, 1838, James H. Ratcliff in behalf of his sister, paid to the defendant, Robert Huntly, $200; and. executed to him a bond, with a condition to pay the cost of, and to dismiss, the proceedings which had been taken for the recovery of alimony, and to indemnify the said Huntly from all liability for the debts and contracts of his wife, so long as she may live separate from him. On. the same day, the defendant, Huntly, delivered to James H. Ratcliff three slaves, and executed to thp *251 plaintiff an actual bill of sale for the same slaves. These-three acts: the payment of the $200, and execution of the bond by Ratcliff; the delivery of the slaves ; and the execution of the bill of sale to the plaintiff, were parts of the same transaction. On the day following;,, the plaintiff executed to James H. Ratcliff an absolute bill of sale for the same slaves; and he, and the defendant, his executor, have held them ever since. The plaintiff alleges, that, by the sale and delivery of the slaves, the legal title vested in James H. Ratcliff, in trust, as a security for the money by him advanced, and to indemnify him ; and then, in trust, for her separate use and benefit, absolutely, and free from all claim on the part of her husband.
The defendant, Huntly, admits the plaintiff’s allegation. But the other defendant denies that there was any such trust, and alleges that James H. Ratcliff, his testator, purchased the slaves, and took the legal title for his own use, and on his own account; and says he made the purchase “ for better or for worse: if Huntly and his wife should remain separate for a long time, it was “ a bad bargain if they should become reconciled in any short time, it was “ a good bargain.’’'
This presents the main question in the cause. Was the-sale and delivery of the slaves to James H. Ratcliff in trusty as alleged by the plaintiff; or was it a purchase by him, for his own use.
We are entirely satisfied that James H. Ratcliff took the slaves in trust, as alleged by the plaintiff.. Whether a trastean, by parol, be added to a deed absolute on its face; is a question not presented by this case; for the conveyance was by parol, viz. by sale and delivery : and, passing by that question, the fact of the trust is established by the evidence, beyond all doubt. James H. Ratcliff professed to pay the $200 for and in behalf of his sister. He bound himself to dismiss the proceedings, and release her claim to. *252 alimony. This he of necessity did, as her agent, and in her behalf; and his bond recites, that her husband had agreed to give her the slaves, and “ that she may ever use, possess and enjoy them, free from any contract or liabilities on his part.’’ Besides this, as a part of the( same transaction, the husband executes to the wile an absolute bill of sale for the slaves. Although this deed could not have the effect of vesting the title in her, yet it amounted to a declaration of a trust in her favor.
We are thus relieved from the necessity of commenting upon the conduct of a brother, who, after undertaking to protect and aid a sister, should -attempt to speculate upon her domestic relations, and to acquire, as a purchaser, for his own use, and, in the language of the answer, “ for better or for worse,’’ property of the husband, to be paid for in part by a surrender of the claim of the sister to alimony.
It was then insisted for the defendant, John P. Ratcliff, that, although the bill of sale executed by the plaintiff to his testator, was inoperative to pass the title, yet it had the effect of making his possession adverse, as an assertion of title in himself, which, having been continued for more than three years, gave him a good title. This position is not tenable. When, by agreement, property is to be held in trust, the trustee is not at liberty to assume the position of an adversary, and cannot make a title to himself by the length of his possession; because he holds for another, and not for himself, and continues to be bound by the original agreement.
It was further insisted, for the same defendant, that the trust was a substitution of the slaves in lieu of the plaintiff’s alimony; and that, as a reconciliation had taken place, the trust in favor of the wife had thereby determined, and consequently she could not maintain this bill, as the trust resulted to the husband, and it was for him to enforce it, if he saw proper. This objection would come with more *253 propriety from the husband. But, admitting it to be open to the other defendant, the reply is: the trust alleged and proven is an absolute one, for the separate use of the wife, which “she may forever possess and enjoy, free from any contract or liability on the part of the husband.” This excludes the idea of a trust resulting to the husband upon the reconciliation, and there is no allegation or proof in regard to the terms of the reconciliation.
There wil 1 be a decree for the plaintiff, and the defendant must pay the costs, except those of the other defendant.
Per Curiam. Decree accordingly.